WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ana Sanchez-Gonzalez,<br><br>Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>Defendant. | No. CV-17-01081-PHX-JJT<br><br>**ORDER** |

At issue is the denial of Plaintiff Anna Sanchez-Gonzalez's[1] Applications for Supplemental Security Income Benefits and Disability Insurance Benefits by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 14, "Pl.'s Br."), Defendant Social Security Administration Commissioner's Opposition (Doc. 15, "Reply"), and Plaintiff's Reply (Doc. 18, "Reply"). The Court has reviewed the briefs and Administrative Record (Doc. 13, R.) and now affirms the Administrative Law Judge's decision (R. at 18–41) as upheld by the Appeals Council (R. at 3–17).

## I. BACKGROUND

Plaintiff filed applications for Supplemental Security Income Benefits and Disability Insurance Benefits on January 25, 2013 for a period of disability beginning

---

[1] Throughout the administrative record, Plaintiff is referred to as Anna Gonzalez Rodriguez. The Court uses the name provided by Plaintiff in her briefing.

May 17, 2011. (R. at 24.) Plaintiff's claim was denied initially on August 7, 2013 (R. at 55–76), and on reconsideration on February 4, 2014 (R. at 116–18.) Plaintiff then testified at a hearing held before an Administrative Law Judge ("ALJ") on September 29, 2015. (R. at 42–54.) On October 21, 2015, the ALJ denied Plaintiff's Applications. (R. at 18–41.) On December 22, 2016, the Appeals Council granted a request for review of the ALJ's decision. (R. at 179–83.) The Appeals Council issued its decision (R. at 3–17) on February 7, 2017 and found that because Plaintiff turned 55 just six weeks after the ALJ's decision, thereby becoming a member of the category for those approaching advanced age, the Plaintiff "became disabled on October 21, 2015, the date of the [ALJ's] decision, but not before that date." (R. at 13.) Plaintiff now appeals the finding that Plaintiff was not disabled from her alleged disability onset date of May 17, 2011 until October 20, 2015. (Pl.'s Br. at 3.)

The Court has reviewed the medical evidence in its entirety and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. In short, upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following alleged impairments: status-post left shoulder surgery, degenerative disc disease of the cervical spine, hypertension, diabetes mellitus, and obesity. (R. at 26.) The ALJ concluded that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (R. at 30.) Ultimately, the ALJ determined that Plaintiff is not disabled and that Plaintiff is unable to perform her past relevant work as a housekeeper, but has the residual functional capacity ("RFC") for light unskilled work in the national economy. (R. at 35–36.)

## II.   LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability

determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience.

20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

**III. ANALYSIS**

Plaintiff raises two arguments for the Court's consideration: (1) the ALJ erred by improperly discounting the opinions of Plaintiff's treating physician; and (2) the ALJ erred by discrediting Plaintiff's symptom testimony. (Pl.'s Br. at 1–2.)

**A. The ALJ Did Not Err by Giving Little Weight to the Opinions of Plaintiff's Treating Physician Because She Provided Specific and Legitimate Reasons, Supported by Substantial Evidence, for Her Decision**

While "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who did not treat the claimant." *Id.*

Given this hierarchy, if the treating physician's evidence is controverted by a nontreating or nonexamining physician, the ALJ may disregard it only after "setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). "Substantial evidence means more than a mere scintilla, but less than a preponderance." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The contradictory opinion of an examining physician constitutes substantial evidence when the "examining physician provides 'independent clinical findings that differ from the findings of the treating physician." *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citing *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985)). "Independent clinical

- 4 -

findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence . . . or (2) findings based on objective medical tests that the treating physician has not herself considered." *Orn*, 495 F.3d at 632.

Here, the ALJ gave little weight to the opinion of Plaintiff's treating physician, Dr. Jeffrey Scott. (R. at 34.) Dr. Scott opined that Plaintiff "could only sit for two hours at a time . . . and could stand or walk one hour at a time." (R. at 34.) The ALJ found this portion of Dr. Scott's opinion was "inconsistent with the medical record as a whole" because "the majority of [Plaintiff's] treatment was for her cervical spine and left shoulder, and her ability to sit, stand, or walk was never an issue, and these restrictions suggested by Dr. Scott are not supported by the record." (R. at 34.) Additionally, noting Plaintiff's issues with her left arm after shoulder surgery, Dr. Scott found that Plaintiff could lift and carry 25 pounds occasionally and 10 pounds frequently with her right arm and only five pounds with her left arm . . . [and] could never crawl, climb or reach, push, or pull with her right arm, and could frequently stoop, squat, and reach with her left arm."[2] (R. at 34.) The ALJ disregarded these findings because "Dr. Scott placed restrictions on the claimant's right arm, when she had two surgeries and treatment on her left shoulder." (R. at 34.)

Plaintiff argues that if Dr. Scott's opinion had been given proper weight as the examining physician, Plaintiff would be limited to sedentary work.[3] (Pl.'s Br. at 17.) Plaintiff points out that under the medical vocational guidelines, "a person . . . who is limited to sedentary work and who is 'closely approaching advanced age,' that is, age 50–54," is considered disabled. (Pl.'s Br. at 3 n.3.) Indeed, the distinction between sedentary

---

[2] The Court notes an inconsistency here, apparently unidentified by the ALJ or parties. Dr. Scott's notes indicate that Plaintiff could never crawl or climb, but those findings seem unrelated to Plaintiff's right or left arm. (R. at 478.) Only the "reach" section is associated with Plaintiff's right and left arms individually, by noting that Plaintiff could never reach with her right arm and frequently reach with her left. (R. at 478.) Dr. Scott's findings regarding Plaintiff's ability to stoop and squat have nothing to do with Plaintiff's arms. But, like the ALJ, the Court is confused as to whether Dr. Scott and the ALJ found that Plaintiff's left shoulder (the one that required prior surgery) or her right shoulder, is the one most significantly impaired.

[3] A claimant who can lift no more than ten pounds at a time is generally limited to sedentary work. 20 C.F.R. § 404.1567(a).

work and any greater level of work, is crucial. Under the guidelines, a person between 50 and 54, who is limited to light work rather than sedentary work, is not disabled. *Compare* 20 C.F.R. pt. 404, subpt. P, app. 2 Rule 202.10, *with* 20 C.F.R. pt. 404, subpt. P, app. 2 Rule 201.09. Thus, Plaintiff argues that the ALJ's error in rejecting Dr. Scott's findings led to her being incorrectly classified under the guidelines, and had the ALJ given weight to Dr. Scott's opinion, Plaintiff would have been found disabled between the ages of 50 and 54.

Plaintiff's examining physician, Dr. Jeffrey Levison, found that Plaintiff "could lift and/or carry 20 pounds occasionally and 10 pounds frequently. He further reported she . . . was limited to reaching with her left upper extremity to shoulder level and below." (R. at 33.) The ALJ gave great weight to Dr. Levison's opinion because it was "consistent with the medical record as a whole, which shows the [Plaintiff] has some limitation with her left upper extremity but still retains the capability of performing significant work-related activities at the light exertional level." (R. at 33.) The ALJ also gave great weight to the opinions of two nonexamining state agency physicians because their opinions "are supported by the record as a whole and the numerous examination findings and the opinion of the consultative examiner that support the finding that the [Plaintiff] remains capable of performing light exertional work with additional limitations." (R. at 33.)

On its own, the ALJ's statement that Dr. Scott's opinion deserved little weight because "it is inconsistent with the record as a whole," is not a specific and legitimate reason to disregard the treating physician's opinion. But the ALJ also discussed extensively the contradictory opinions of Dr. Levison and two agency reviewers. The findings of the agency reviewers were not based on independent clinical findings, as they never observed the patient, performed different tests, or came to different diagnoses. But Dr. Levison made independent clinical findings based on an examination that included attempting to manipulate Plaintiff's shoulder and observing her range of motion and gait. *See Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) (explaining that an examining physician provided independent clinical findings where "instead of a conclusory 'diagnosis'

consisting of 'check marks in boxes on a form supplied by the Secretary,' [the examining physician's] findings rested on his own neurological examination of [claimant]."). Based on that visit, Dr. Levison made the findings that Plaintiff "appears to have pain way out of proportion to her previous diagnosis of rotator cuff injury . . . [and has] normal range of motion about her cervical spine." (R. at 328.) These findings differ from Dr. Scott's. Their conclusions differed too, as Dr. Levison concluded Plaintiff could perform light exertional work, while Dr. Scott concluded she could not. *See Allen*, 749 F.2d at 579 (requiring that both the findings (the diagnosis) and the conclusion (claimant's resulting disability status) differ from the treating physician's in order to constitute substantial evidence). Because Dr. Levison reached different findings and a different conclusion about Plaintiff, based on his independent clinical examination, his opinion constitutes substantial evidence that may discredit Dr. Scott's. Thus, the ALJ provided specific and legitimate reasons, supported by substantial evidence, to give little weight to Dr. Scott's opinion.

### B. The ALJ Did Not Err by Rejecting Plaintiff's Symptom Testimony Because There Was Affirmative Evidence of Malingering

"In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). Having decided that Plaintiff satisfied the first step by presenting objective medical evidence of an impairment "that could reasonably be expected to produce [her] pain," the ALJ moved to step two of the analysis. (R. at 30.) There, "if the [Plaintiff] meets the first test, and there is no evidence of malingering, the ALJ can reject the [Plaintiff's] testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

Here, Dr. Levison opined that Plaintiff was malingering. (R. at 32.) During his examination, Dr. Levison noted that while Plaintiff "was seen at times reaching her left shoulder forward . . ., when [he] even lightly touched [Plaintiff's] shoulder or any part of her body she sobbed violently and cried out in pain." (R. at 32.) Dr. Levison also reported that Plaintiff "had extreme and heavy subjective overlay related to her presentation, and

[he] suspected that she was likely malingering . . . [and] that her alleged left shoulder pain was 'way out of proportion to her previous diagnosis of rotator cuff injury and subsequent repair.'" (R. at 32.)

Plaintiff contends that Dr. Levison's opinion on this matter is moot because "the ALJ did not make an affirmative finding of malingering." (Pl.'s Br. at 20.) Plaintiff argues that because the ALJ did not expressly endorse Dr. Levison's concerns about malingering, "the standard that requires specific, clear, and convincing reasons to reject a claimant's symptom testimony should apply in this case." (Pl.'s Br. at 20.) Plaintiff further argues that when that standard is properly applied, the ALJ erred by failing to provide clear and convincing reasons for rejecting Plaintiff's symptom testimony. (Pl.'s Br. at 20.) Defendant responds that no affirmative finding of malingering is required, and thus the ALJ did not need to apply the clear and convincing standard. (Resp. at 2–3.)

Based on the Ninth Circuit's rulings on this matter, the Court agrees with Defendant. In *Carmickle v. Commissioner*, the Ninth Circuit disavowed a prior holding that the ALJ must either make a specific finding of malingering or apply the clear and convincing standard. 533 F.3d 1155, 1160 n.1 (9th Cir. 2008). Instead, the court affirmed an unpublished case's holding that requiring such a finding would be "anomalous in that the weight of our cases hold that the mere existence of 'affirmative evidence suggesting' malingering vitiates the clear and convincing standard of review." *Id.* (citing *Schow v. Astrue*, 272 Fed.Appx. 647, 651 (9th Cir. 2008)). As the Court reads the case law, where there is affirmative evidence of malingering from a medical source whose opinion is given great weight, the ALJ need not make his own specific finding of malingering. Here, Dr. Levison's evaluation of Plaintiff provided affirmative evidence of malingering, and so the ALJ was not required to give clear and convincing reasons to reject Plaintiff's testimony. Faced with evidence of malingering, the ALJ did not err in discrediting Plaintiff's symptom testimony. *See Brownton v. Heckler*, 571 F.Supp. 140, 144 (N.D. Cal. 1983) (affirming the ALJ's finding that Plaintiff was not disabled because Plaintiff was likely malingering).

## IV. CONCLUSION

The ALJ did not err in discounting the opinion of treating physician Dr. Scott and instead giving great weight to the opinion of examining physician Dr. Levison because the ALJ gave specific and legitimate reasons, supported by substantial evidence, for doing so. The ALJ also did not err in discounting Plaintiff's symptom testimony because evidence of malingering relieved the ALJ of his burden to provide clear and convincing reasons for discrediting the testimony. Accordingly, the Court affirms.

**IT IS THEREFORE ORDERED** affirming the October 21, 2015 decision of the Administrative Law Judge, (R. at 18–41), as upheld by the Appeals Council on February 7, 2017 (R. at 3–17).

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 31st day of January, 2019.

Honorable John J. Tuchi
United States District Judge